UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH NATHANIEL NEWLIN,<br><br>                Plaintiff,<br><br>    -v-<br><br>KILOLO KIJAKAZI, Commissioner of Social Security,[1]<br><br>                Defendant. | CIVIL ACTION NO.: 19 Civ. 6248 (SLC)<br><br>**OPINION & ORDER** |

**SARAH L. CAVE**, United States Magistrate Judge.

## I.       INTRODUCTION

Before the Court is the motion of David F. Chermol, Esq. ("Chermol"), of the Chermol &

Fishman, LLC, (the "Firm"), counsel for Plaintiff Joseph Nathaniel Newlin ("Mr. Newlin"), seeking

an award of attorneys' fees in the amount of $74,488.88 (the "Initial Requested Fees"), pursuant

to a contingency fee agreement (the "Agreement") and the Social Security Act § 206(b)(1), 42

U.S.C. § 406(b)(1) (the "Act").  (ECF No. 27 (the "First Motion")).  The First Motion follows a

favorable decision awarding benefits to Mr. Newlin after the parties stipulated to a remand of

this case to the Commissioner of Social Security (the "Commissioner") for further proceedings.

(ECF No. 23).

Also before the Court is a second motion in which Chermol seeks an additional $13,057.00

in attorneys' fees (the "Auxiliary Fees", with the Initial Requested Fees, the "Total Requested

---

[1] Kilolo Kijakazi is the Acting Commissioner of the Social Security Administration.  See Young v. Kijakazi,
No. 20 Civ. 3604 (SDA), 2021 WL 4148733, at *1 n.1 (S.D.N.Y. Sept. 13, 2021).  Pursuant to Federal Rule of
Civil Procedure 25(d), the Clerk of the Court is respectfully directed to substitute Kilolo Kijakazi as the
Defendant in the caption.

Fees")) under the Act following awards of benefits to Mr. Newlin's auxiliary beneficiaries.  (ECF No. 32 (the "Second Motion"), with the First Motion, the "Motions")).

For the reasons set forth below, the Motions are GRANTED.  The Court awards attorneys' fees to Chermol in the amount of $87,545.88, and orders Chermol to refund promptly to Mr. Newlin $11,568, the amount of attorneys' fees previously awarded under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (the "EAJA Fees").  (See ECF Nos. 26; 27 ¶ 4 (referencing two EAJA fee awards totaling $11,568); 32 ¶ 5 (same)).

## II.    BACKGROUND

On April 26, 2012, Mr. Newlin filed an application for Disability Insurance Benefits ("DIB"), alleging a disability onset date of November 14, 2007.  (ECF No. 1 ¶ 5).  His application was denied at the initial level and, on July 14, 2014, by an Administrative Law Judge ("ALJ"), and the Appeals Council denied review, rendering the ALJ's decision final.  (Id. ¶¶ 5–6 (the "2014 ALJ Decision")).

On April 27, 2016, Mr. Newlin signed a retainer agreement engaging the Firm to represent him in connection with his application for DIB.  (ECF No. 27-2 (the "2016 Agreement")).  The 2016 Agreement provided that, if Mr. Newlin were awarded DIB "after an appeal to the Appeals Council," he agreed to pay the Firm 25% "of all past due benefits which are awarded on my account, regardless of whether that amount exceeds" the EAJA Fees.  (Id. at 1).  The 2016 Agreement defined "my account" to include benefits awarded to Mr. Newlin as well as "any auxiliary beneficiaries under my account."  (Id. at 1).  The Firm's policy "is to never require a claimant to pay more than 25% of past due benefits after payment for ALL levels of administrative and federal court representation have been accounted for . . ."  (ECF No. 27 ¶ 3).

On June 13, 2016, Mr. Newlin filed an action in this Court seeking review of the 2014 ALJ Decision.  (ECF No. 1 ¶ 7; see Newlin v. Colvin, No. 16 CV 4413 (RHP) (RLE)).  By stipulation and order dated February 7, 2017, the action was remanded to the Commissioner for further administrative proceedings.  (ECF No. 1 ¶ 7).  Following a hearing, on March 13, 2019, a different ALJ issued a decision denying Mr. Newlin's application for DIB, and the Appeals Council denied review.  (Id. ¶¶ 8–9 (the "2019 ALJ Decision")).

On July 3, 2019, Mr. Newlin filed this action seeking review of the 2019 ALJ Decision.  (ECF No. 1).  By stipulation and order dated March 13, 2020, the action was remanded to the Commissioner for further administrative proceedings.  (ECF No. 23).  By stipulation and order dated June 10, 2020, the Commissioner agreed to pay Mr. Newlin the EAJA Fees.  (ECF No. 26).

On May 5, 2021, the Commissioner issued a notice of award finding that Mr. Newlin became disabled on October 31, 2010, and was entitled to DIB beginning April 2011.  (ECF No. 27-1 (the "Notice of Award")).  The total amount of past due benefits was $297,955.52, $74,488.88 of which the Commissioner withheld as corresponding to 25% of the past due benefits allocable to attorneys' fees.  (Id. at 2–4).

After receiving the Notice of Award, the Firm "made 21 calls to SSA and its payment center over the past 7 months attempting to obtain all of the notices of award in this case."  (ECF No. 32 ¶ 2).  On October 7, 2021, the Firm received a communication from the SSA informing them that auxiliary notices of award existed and were being sent.  (Id.)  On November 2, 2021, the Firm received auxiliary benefit notices awarding $52,228 in past due benefits to "auxiliary B," and $8,675.00 in past due benefits to "auxiliary J."  (ECF Nos. 32-1 (the "Auxiliary Notices of Award"); 32 ¶ 3).  The Auxiliary Notices of Award are dated June 27, 2021.  (ECF No. 32-1 at 1, 5).  The

Commissioner did not withhold any amount for attorneys' fees from the Auxiliary Notices of Award. (ECF Nos. 32-1; 32 ¶ 10).

On November 9, 2021, the Firm filed the Second Motion. (ECF No. 32). Based on the total amount of past due benefits awarded to auxiliaries B and J ($60,903.00), the Firm would be entitled to seek 25%, or $15,225.75, but has decided not to seek $2,168.75 in fees with respect to auxiliary J, and instead seeks $13,057.00. (ECF No. 32 ¶ 10). Therefore, the Total Requested Fees is $87,545.88 ($74,488.88 + $13,057.00). (Id. at 7–8).

Chermol attests that he expended 63.3 hours working on Mr. Newlin's two District Court appeals. (ECF No. 27-3 at 2–3, 5–6). Chermol is a 1996 graduate of Temple University Law School, and for ten years, worked as an attorney for the SSA, first as a Special Assistant United States Attorney in the Eastern District of Pennsylvania and the District of Delaware and then at the SSA. (Id. at 1 ¶ 2). In 2008, Chermol co-founded the Firm, which represents disability claimants in administrative and federal court proceedings. (Id. at 1–2 ¶¶ 2–3). He has presented continuing legal education training on disability law, received awards for his disability litigation experience, and been active in bar association work focused on disability law. (Id. at 1–2 ¶ 2).

The Commissioner concedes that the First Motion is timely and requests no more than 25% of Mr. Newlin's past due benefits, but points out that $74,488.88 equates to a de facto hourly rate of $1,176.76 ($74,488.88 / 63.3), which some courts in the Second Circuit have deemed to be a windfall. (ECF No. 28 at 4–5 & n.2). The Commissioner points out that the Second Motion was filed more than 17 days after the date of the Auxiliary Notices of Award, and defers to the Court's determination as to timeliness. (ECF No. 33 at 2–3). The Commissioner also notes that the Total Requested Fees equates to a de facto hourly rate of $1,383.03 ($74,488.88 +

$13,057.00 / 63.3), an amount that some courts in this Circuit have deemed to be a windfall. (Id. at 5–6 & n.2).

On November 29, 2021, Chermol submitted a reply in further support of his request that the Court deem the Second Motion timely and award the Total Requested Fees. (ECF No. 34).

## III.    DISCUSSION

### A. Legal Standard

The Act provides that:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Commissioner of Social Security may, notwithstanding the provisions of section 405(i) of this title, but subject to subsection (d) of this section, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

42 U.S.C. § 406(b)(1)(A). The Supreme Court has explained that "§ 406(b) does not displace contingent-fee agreements" but rather, "calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." Gisbrecht v. Barnhart, 535 U.S. 789, 807 (2002). Within the 25% statutory limit, an attorney "must show that the fee[s] sought [are] reasonable for the services rendered." Id.

The Court's analysis of reasonableness "must begin with the agreement [between a plaintiff and her counsel], and the district court may reduce the amount called for by the contingency agreement only when it finds the amount to be unreasonable." Wells v. Sullivan, 907 F.2d 367, 371 (2d Cir. 1990) (internal citation omitted). When evaluating the reasonableness

of a contingency fee agreement, "a court should [] balance the interest in protecting claimants from inordinately large fees against the interest in ensuring that attorneys are adequately compensated" so that they continue to represent clients in "disability benefits cases." Bate v. Berryhill, No. 18 Civ. 1229 (ER), 2020 WL 728784, at *2 (S.D.N.Y. Feb. 13, 2020) (internal citations omitted).

In assessing the reasonableness of a request for attorneys' fees, courts in this District consider: (1) "whether the contingency fee is within the twenty-five percent limit;" (2) "whether the retainer was the result of fraud or overreaching by the attorney;" and (3) "whether the attorney would enjoy a windfall relative to the services provided." Pelaez v. Berryhill, No. 12 Civ. 7796 (WHP) (JLC), 2017 WL 6389162, at *1 (S.D.N.Y. Dec. 14, 2017) (internal citations omitted), adopted by, 2018 WL 318478 (S.D.N.Y. Jan. 3, 2018).   The Court is also mindful of the Second Circuit's recent guidance to district courts evaluating attorneys' fee requests under the Act:

> In determining whether there is a windfall that renders a § 406(b) fee in a particular case unreasonable, courts must consider more than the de facto hourly rate. Accord Jeter v. Astrue, 622 F.3d 371, 381 (5th Cir. 2010) ("[T]he lodestar calculation alone cannot constitute *the* basis for an 'unreasonable' finding . . . [T]he district court must also articulate the factors that demonstrate to the court that the fee is unearned."). In other words, even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case. Among the factors to be considered are the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do. . . . Secondly, courts should consider the nature and length of the professional relationship with the claimant—including any representation at the agency level—when determining whether a requested fee can truly be deemed a windfall. While § 406(b) fees compensate counsel for court-related work, consideration of "the time spent and work performed by counsel on the case when it was pending at the agency level" can inform a district court's understanding of "the overall complexity of the case, the lawyering skills necessary to handle it effectively, the risks involved, and the significance of the result achieved in district court." Mudd v. Barnhart, 418 F.3d 424, 428 (4th Cir. 2005).  . . .  A third factor to consider is the satisfaction of the disabled

> claimant . . . . Finally, a fourth important factor to consider is how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result. Lawyers who operate on contingency—even the very best ones—lose a significant number of their cases and receive no compensation when they do. "In the absence of a fixed-fee agreement, payment for an attorney in a social security case is inevitably uncertain, and any reasonable fee award must take account of that risk." Wells II, 907 F.2d at 371.

Fields v. Kijakazi, 24 F.4th 845, 854–56 (2d Cir. 2022).

The Court may award fees under the EAJA or Section 406(b), but a "claimant's attorney must 'refun[d] to the claimant the amount of the smaller fee.'" Rodriguez v. Colvin, 318 F. Supp. 3d 653, 658 (S.D.N.Y. 2018) (quoting Gisbrecht, 535 U.S. at 796); see Wells v. Bowen, 855 F.2d 37, 42 (2d Cir. 1988) (explaining that "dual fee applications are not improper as long as the lesser of any two amounts awarded goes to the attorney's client").

An application under Section 406(b) must be filed within fourteen days of a notice of award, which begins to run when "the claimant receives notice [from the agency] of the benefits calculation." Sinkler v. Comm'r of Soc. Sec., 932 F.3d 83, 89 (2d Cir. 2019) (applying fourteen-day plus three-day mailing rule in Fed. R. Civ. P. 54(d)(2)(B) to Section 406(b) applications). This limitations period "is not absolute," and a district court has discretion to "enlarge that filing period where circumstances warrant." Id.

**B. Application**

**1. Timeliness**

The Commissioner does not dispute that Chermol timely filed the First Motion (ECF Nos. 28; 33 at 2), but suggests that the Second Motion is "more complicated" because Chermol filed it on November 9, 2021, more than 17 days after the June 27, 2021 Auxiliary Award Notice. (ECF No. 33 at 2).

The Court finds that the circumstances here warrant excusing Chermol's delay in filing the Second Motion.  First, Chermol attests that, over seven months, he and his staff made "21 calls to SSA and its payment center . . . attempting to obtain all of the notices of award in this case." (ECF No. 32 at 1 ¶ 2).  Such an outreach effort would have been unnecessary if Chermol, or Mr. Newlin, had already received the Auxiliary Notices of Award, and gives rise to the inference that neither had received them.  Only through the Firm's diligence was Chermol able to determine that the SSA had issued the Auxiliary Notices of Award, which were necessary to "identify the maximum attorney's fee that may be awarded under § 406(b)." Sinkler, 932 F.3d at 85.  Once Chermol had this information—on November 2, 2021—he filed the Second Motion seven days later.  (ECF No. 32).  The Court therefore finds that Chermol was diligent in filing the Second Motion.  See Ferreira v. Kijakazi, No. 18 Civ.1469 (AEK), 2022 WL 123623, at *3 (S.D.N.Y. Jan. 13, 2022) (finding that claimant's counsel's diligence in pursuing additional notices of award justified excusing delay in filing Section 406(b) fee application).

Second, the Commissioner does not dispute Chermol's representation that on October 7, 2021, an SSA representative "apologized" for failing to send copies of the Auxiliary Notices of Award to the Firm.  (ECF No. 32 at 2 ¶ 2).  Given the Firm's diligence in attempting to ascertain all available notices of award for Mr. Newlin, the Court finds that the delay associated with Chermol's filing of the Second Motion "is fundamentally a problem of Defendant's [the Commissioner's] making" as a result of the SSA's "staggered issuance" of the Notice of Award and the Auxiliary Notices of Award.  Ferreira, 2022 WL 123623, at *3 (noting that SSA's issuance of separate notices of award months apart caused claimant's counsel's delayed filing of Section 406(b) application and justified enlargement of filing period).

The Court therefore deems the Second Motion timely.

    **2.**   <u>**Reasonableness**</u>

Applying the factors the Second Circuit recently expounded in <u>Fields</u>, the Court finds that Chermol's expertise and efficiency "allowed [him] to accomplish in just [63.3] hours what other lawyers might reasonably have taken twice as much time to do." <u>Fields</u>, 24 F.4th at 854. In this action, Mr. Newlin's second in federal court, Chermol spent 30.7 hours reviewing the 780-page administrative record and drafting a concise motion for judgment on the pleadings that led the Commissioner to agree to negotiate a stipulated remand for further proceedings, which resulted in an award of DIB to Mr. Newlin. (ECF Nos. 21; 23; 27-3 at 5–6). Chermol's efforts in the first federal action were similarly efficient, even though the 2019 ALJ Decision resulted in a denial. (ECF No. 27-3 at 2–3). As in <u>Fields</u>, the Court agrees that "it would be foolish to punish a firm for its efficiency and thereby encourage inefficiency." <u>Fields</u>, 24 F.4th at 854.

Second, Chermol's relationship with Mr. Newlin spanned at least five years, and involved more than 175 hours litigating on his behalf at the administrative level. (ECF Nos. 27 at 2 ¶ 3; 32 at 3 ¶ 7). The Court infers that Chermol's "significant investment of time and effort in [Mr. Newlin's] case at the agency level further enabled [the Firm] to operate with efficiency in the federal courts." <u>Fields</u>, 24 F.4th at 855.

Third, the Firm's efforts on Mr. Newlin's behalf "were particularly successful," resulting in substantial six-figure benefits awards to him and his two auxiliary beneficiaries. <u>Fields</u>, 24 F.4th at 855. (<u>See</u> ECF Nos. 27-1; 32-1). Mr. Newlin, despite notice of the Motions (ECF Nos. 27 at 5 ¶ 14; 32 at 7 ¶ 14), has not objected to the Total Requested Fees, and in fact affirmatively supports them. (ECF Nos. 32 at 7 ¶ 16; 32-4). The Court agrees that, because of the Firm's

"efforts, Mr. [Newlin] has achieved an excellent result in this case, and there is no reason to think he is dissatisfied."  Fields, 24 F.4th at 855.

Fourth and finally, the result in this case was not certain, as demonstrated by the fact that, in over nine years of litigation, two ALJs denied Mr. Newlin's applications, the Appeals Council twice elected not to review those decisions, and two federal court actions were necessary before Mr. Newlin finally received the DIB he was due.  Therefore, this is not a case "where the lawyer takes on a contingency-fee representation that succeeds immediately and with minimal effort, suggesting very little risk of nonrecovery," the type of case in which courts may be concerned about granting a windfall.  Fields, 24 F.4th at 856.

Considering each of the four Fields factors, and comparing the de facto hourly rate to that approved by the Second Circuit in the circumstances of that case, i.e., $1,556.98, the Court finds that the Total Requested Fees would not be a windfall to the Firm, and are therefore reasonable. Fields, 24 F.4th at 856; see Ferreira, 2022 WL 123623, at *4 (finding fee award reasonable where de facto hourly rate was $1,000 per hour and collecting cases approving rates above $1,000 per hour).

Accordingly, the Court awards attorneys' fees in the amount of $87,545.88, and directs the Firm to refund to Mr. Newlin the EAJA Fees.

IV.   **CONCLUSION**

For the foregoing reasons, the Motion is GRANTED as follows:

(1)  The Firm is awarded fees under Section 406(b) in the amount of $87,545.88; and

(2)  The Firm shall promptly refund to Ms. DeJesus the sum of $6,000.

The Clerk of Court is respectfully directed to close ECF Nos. 27 and 32.

Dated: New York, New York
        March 30, 2022                          SO ORDERED.

                                                **SARAH L. CAVE**
                                                **United States Magistrate Judge**